**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

LEONARD AVILA,
*Plaintiff-Appellee*,

v.

LOS ANGELES POLICE DEPARTMENT,
*Defendant*,

and

CITY OF LOS ANGELES; COMMANDER
STUART MAISLIN,
*Defendants-Appellants*.

No. 12-55931

D.C. No.
2:11-cv-01326-
SJO-FMO

---

LEONARD AVILA,
*Plaintiff-Appellee*,

v.

LOS ANGELES POLICE DEPARTMENT,
*Defendant*,

and

CITY OF LOS ANGELES,
*Defendant-Appellant*.

No. 12-56554

D.C. No.
2:11-cv-01326-
SJO-FMO

OPINION

2                    AVILA V. LAPD

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
February 6, 2014—Pasadena, California

Filed July 10, 2014

Before: Barry G. Silverman and Andrew D. Hurwitz,
Circuit Judges, and C. Roger Vinson, Senior District
Judge.[*]

Opinion by Judge Hurwitz;
Dissent by Judge Vinson

---

**SUMMARY**[**]

---

**Labor Law**

The panel affirmed the district court's judgment, after a
jury trial, in favor of a police officer who claimed that the Los
Angeles Police Department fired him in retaliation for
testifying in a Fair Labor Standards Act lawsuit brought by a
fellow officer.

---

[*] The Honorable C. Roger Vinson, Senior District Judge for the U.S.
District Court for the Northern District of Florida, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

The panel held that the officer's FLSA retaliation claim was not precluded by the LAPD Board of Rights' recommendation that he be terminated for insubordination in not claiming overtime.

The officer alleged that the real reason he was fired was not because he worked through lunch without requesting overtime, but rather because he testified in the prior lawsuit. The panel held that the district court did not err in declining to give two special jury instructions, and special verdict questions tied to those instructions, stating that an employee who engages in protected activity is not insulated from adverse action for violating workplace rules. The panel held that to the extent that the City of Los Angeles was urging that it would have reached the same decision on terminating the officer in the absence of his testimony in the prior lawsuit, the district court was well within its discretion in refusing to give the instructions because the evidence did not support the same decision defense, nor did it support the City's argument that the firing was based on the content of the officer's testimony, and not on the mere fact that he had testified. Because the City did not raise the issues in its briefs, the panel declined to address whether the district court erred in refusing to give a "same decision" instruction and an instruction that the officer was required to prove that his testimony was a "motivating factor" in his termination.

The panel held that the district court did not abuse its discretion in awarding attorney's fees and liquidated damages.

Dissenting, Judge Vinson wrote that the officer not only testified in the prior case, but also admitted to insubordination when he testified. Judge Vinson wrote that the district court

plainly erred in failing to give the "same decision" instruction. He wrote that this issue was not waived because it was inextricably interrelated with the issue whether the district court erred in failing to give the special instructions. He also wrote that there was ample evidence to support the same decision defense. Judge Vinson wrote that reversible error occurred, and the case should be remanded for a new trial.

---

## COUNSEL

Gregory A. Wedner (argued), Mark K. Kitabayashi, and Sloan R. Simmons, Lozano Smith, Los Angeles, for Defendants-Appellants.

Matthew S. McNicholas and Douglas D. Winter, McNicholas & McNicholas, LLP, Los Angeles, California; Stuart B. Esner (argued) and Andrew N. Chang, Esner, Chang & Boyer, Pasadena, California, for Plaintiff-Appellee.

---

## OPINION

HURWITZ, Circuit Judge:

Leonard Avila, a police officer, periodically worked through his lunch break but did not claim overtime. According to his commanding officer, Avila was a model officer. The Los Angeles Police Department (LAPD), however, deemed Avila insubordinate for not claiming overtime and fired him.

Not coincidentally, that termination occurred only after Avila had testified in a Fair Labor Standards Act (FLSA) lawsuit brought by fellow officer, Edward Maciel, who sought overtime pay for working through his lunch hours. Avila then brought this action, claiming that he was fired in retaliation for testifying, in violation of the FLSA anti-retaliation provision, 29 U.S.C. § 215(a)(3). The evidence at trial was that the only officers disciplined for not claiming overtime were those who testified against the LAPD in the Maciel suit, notwithstanding uncontested evidence that the practice was widespread in the LAPD.

A jury returned a verdict in favor of Avila on his FLSA anti-retaliation claim. On appeal, the City of Los Angeles and the LAPD contend that the jury was not correctly instructed. We find no reversible error and affirm.

**I**

In January 2008, Leonard Avila testified under subpoena in a FLSA suit against the City of Los Angeles in the Central District of California brought by Maciel, who sought overtime pay under 29 U.S.C. § 207(a)(1) for working through his lunch hour. Avila testified that he and many other LAPD officers, including his supervisors, operated under an unwritten policy of not claiming overtime for working through lunch. After Avila testified, the LAPD filed an internal investigation complaint against him and another officer who testified at the Maciel trial, Richard Romney, alleging that they had been insubordinate by not submitting requests for overtime.

The officers were ordered to appear before the LAPD Board of Rights (BOR), a disciplinary review body. Avila

was sworn in, entered a plea of not guilty, heard opening statements, but resigned during the hearing's lunch break to accept a job with another law enforcement agency.  The BOR nonetheless proceeded against Avila in absentia.  The board found Avila guilty of insubordination and recommended termination, and the Chief of Police then so ordered.  Romney was also fired.[1]

Avila then sued the LAPD and the City of Los Angeles (collectively, the "City") in the Central District of California, asserting claims under the anti-retaliation provision of FLSA (29 U.S.C. § 215(a)(3)), 42 U.S.C. § 1983, and California law.[2]  The City moved for summary judgment, arguing that because Avila never sought judicial review of the BOR decision, his federal claims were precluded.  The district court denied the motion, but precluded Avila from challenging any factual findings made by the BOR.

After Avila rested at trial, the court granted the City's motion for judgment as a matter of law on the state law claims.  The jury found in favor of Avila on his FLSA claim, but against him on the § 1983 claim, and awarded damages of $50,000.  The district court entered a judgment on the jury verdict, and later amended it to award Avila $50,000 in liquidated damages and $579,400 in attorney's fees.  We have

---

[1] Officer Teresa Anderson provided similar testimony in a deposition in the Maciel case; she was fired.  A California state court found her termination retaliatory and she was reinstated.  A disciplinary complaint also was initiated against Avila's supervisor, who testified that he "probably" violated the overtime rules, but the supervisor was not disciplined.

[2] Commander Stuart Maislin was also named as a defendant.  Avila has not appealed the judgment that was entered below in Maislin's favor.

jurisdiction over the City's appeal under 28 U.S.C. § 1291 and affirm.

## II

The City first contends that the BOR recommendation that Avila's employment be terminated precludes his FLSA retaliation claim. We review the district court's rejection of that argument de novo. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 849–50 (9th Cir. 2000).

A state agency determination is entitled to preclusive effect if three requirements are satisfied: "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." *Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994) (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). We give state administrative agency judgments the same preclusive effect they receive in state court. *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 799 (1986).

The dispositive question is whether the BOR actually decided whether Avila was fired in retaliation for testifying in the Maciel action. The City relies heavily on *White v. City of Pasadena*, 671 F.3d 918 (9th Cir. 2012), in urging issue preclusion. The plaintiff in *White* was a police officer who challenged her termination in a grievance proceeding. *Id*. at 922. At an administrative hearing before an arbiter, White presented "evidence that the City's investigation and her termination were in retaliation" for a lawsuit she had filed against the City. *Id*. at 924. The arbiter found that the City had not demonstrated just cause for termination, but also

found that White had not shown that she was a victim of retaliation. *Id*. After an independent review of the record, the City Manager upheld the termination, specifically rejecting White's retaliation claims. *Id*. White's subsequent civil rights action against the City again raised the retaliation claim. *Id*. at 925. The district court dismissed the claim, and we affirmed, finding the administrative determination issue preclusive. *Id*. at 930–31.

This case is quite different. Here, neither the BOR decision nor the termination order addressed the issue of retaliation. The administrative proceedings simply found Avila guilty of the one count in the complaint: "Prior to 2008, you, while on duty, were insubordinate to the department when you failed to submit requests for compensation for overtime that you had worked, as directed through department publications." The district court thus properly concluded that the agency had not determined the *motive* for the disciplinary action. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1474–75 (9th Cir. 1993) (holding that a BOR determination "could not have preclusive effect on the different issue the jury faced"). There is no issue preclusion.

## III

Avila claimed that the real reason he was fired was not because he worked through lunch without requesting overtime, but rather because he testified in the Maciel lawsuit. The City does not dispute that if Avila's claim is true, the termination violated FLSA, which makes it "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee . . . has testified . . . in any [FLSA] proceeding . . . ." 29 U.S.C. § 215(a)(3). Nor does the City contend that

the evidence below was insufficient to support the jury verdict. Rather, the City's only argument on appeal is that the jury was not properly instructed.

## A.

It is important to note at the outset precisely what issues are and are not before this court with respect to the jury instructions. The City requested an instruction that Avila was required to prove that his testifying at the Maciel trial was a "motivating factor" in his termination. In contrast, Avila had requested an instruction that he was required to prove that his testifying was the "but-for cause" of the termination. The district court gave the City's requested instruction, which was consistent with Ninth Circuit law. *See Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996) (requiring that retaliation be a "substantial factor" in adverse action). The City does not argue on appeal that the district court erred in giving the "motivating factor" instruction. *See United States v. Guthrie*, 931 F.2d 564, 567 (9th Cir. 1991) (discussing invited error).[3]

The City did request an instruction that there was no liability under the FLSA anti-retaliation provision if the "same decision" would have been made had Avila not

---

[3] While this appeal was pending, the Supreme Court held that a "but-for" instruction is required when the plaintiff makes "a retaliation claim under § 2000e–3(a)," the Title VII anti-retaliation provision. *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). Given the City's failure to raise the issue, we do not today address whether a "but-for" instruction is now also required in FLSA retaliation cases. *But see Lambert v. Ackerley*, 180 F.3d 997, 1005 (9th Cir. 1999) (en banc) (rejecting the argument "that the breadth of Title VII's anti-retaliation provision dictates the construction we should give the FLSA provision").

testified. Originally, developed in Title VII cases, the same decision affirmative defense shields an employer from liability when an adverse action is based both on protected and unprotected activities; the employer has the burden of "proving that it would have made the same decision in the absence of" the protected activity. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 254 (1989); *see also Knickerbocker*, 81 F.3d at 911.

But, the City's briefs on appeal do not assign as error the district court's refusal to give the "same decision" instruction. Arguments "not raised clearly and distinctly in the opening brief" are waived. *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009).

Indeed, even if, like our dissenting colleague, we were to take up the issue sua sponte, the result would be the same. "There must be a sufficient evidentiary foundation to support giving the instruction." *Gantt v. City of L.A.*, 717 F.3d 702, 706–07 (9th Cir. 2013). The uncontested evidence in this case is that Avila would not have been fired had he not testified. Indeed, an LAPD official confirmed at trial that the only officers disciplined for the overtime violations were those who testified in the Maciel action, and that Avila would never have been disciplined had he not testified. The City's counsel also candidly conceded this at oral argument. And, the only evidence introduced at the disciplinary hearing was Avila's testimony in the Maciel matter. There thus was simply no evidentiary foundation for a same decision instruction. *See Lambert v. Ackerley*, 180 F.3d 997, 1009 (9th Cir. 1999) (en banc) (holding a district court's failure to give a same decision instruction harmless because "the evidence before the jury strongly support[ed] the conclusion that the plaintiffs were discharged in retaliation for their

overtime complaints and that they would *not* have been discharged had they not engaged in this protected conduct").

**B**.

The *only* issue on the merits actually raised by the City is whether the district court committed reversible error in declining to give the jury two requested special instructions and to submit several proposed special verdict questions tied to those instructions.

The proposed instructions were:

> 1.  An employee who engages in protected activity is not insulated from adverse action for violating workplace rules, and an employer's belief that the employee committed misconduct is a legitimate, non-discriminatory reason for adverse action.

> 2.  An employer is forbidden to discriminate or retaliate against an employee who participates in an activity deemed to be protected under federal or state law. But participation doesn't insulate an employee from being discharged for conduct that, if it occurred outside the protected activity, would warrant termination.[4]

The proposed special verdict questions were, as relevant to this appeal:

---

[4] The City requested a third special instruction, but does not contend on appeal that the district court erred by failing to give it.

2.   Was the City of Los Angeles's decision to discharge Leonard Avila based upon his engaging in a protected activity under the FLSA, or admitting misconduct, or both?

. . .

If your answer to question 2 is engaging in protected activity, then answer question 3. . . . If your answer is both engaging in protected activity and admitting misconduct, go to question 4.

3.   Was the Defendants' conduct a substantial factor in causing harm to Leonard Avila?

. . .

4. Has the Defendant proved, by a preponderance of the evidence that the Defendant would have made the same decision to discharge Plaintiff even if Plaintiff's protected activity had played no role in the Defendant's decision to?

After declining the proposed instructions, the district court read the following stipulation to the jury:

On January 16th, 2008, Plaintiff Avila appeared in federal court pursuant to a subpoena and gave sworn testimony at the jury trial in the Maciel case.  The giving of this testimony is protected activity under the Fair Labor Standards Act.

The district court then instructed the jury as follows:

> The plaintiff seeks damages against defendant L.A.P.D. for retaliation under the FLSA. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:
>
> 1.  Plaintiff engaged in or was engaging in an activity protected under federal law, that is he testified in a FLSA action.
>
> 2.  The employer subjected plaintiff to an adverse employment action.
>
> 3.  The protected activity was a motivating reason for the adverse employment action.
>
> If the plaintiff has proven all three of these elements, the plaintiff is entitled to your verdict. However, if the defendant has proven by a preponderance of the evidence that the plaintiff's participation in a protected activity played no role in any of the adverse employment decisions, the defendant is entitled to your verdict.

The City did not object to these instructions.

After the jury asked a question about protected activity, the City renewed its requests for the supplemental instructions and the special verdicts. The district court told the jury to rely on its original instructions. The verdict in favor of Avila on the FLSA claim followed.

## C.

The City requested the special instructions in support of its argument that it had not fired Avila because he testified, but rather because he failed to request overtime. The City also argues that FLSA only prohibits adverse action based on the fact that Avila testified at the Maciel trial, not the use of his testimony.

To the extent that the City is urging that it would have reached the same decision on terminating Avila in the absence of his testimony, as we have noted above, the district court was well within its discretion in refusing to give the supplemental instructions. There was *no* evidence to support the same decision defense; the City's own witness made plain that only those who testified in the Maciel suit were disciplined for failing to take overtime. It simply cannot be argued on this record that Avila would have been fired had he not testified.

The City's argument that the firing was not in contravention of the FLSA anti-retaliation clause because it was based on the content of Avila's testimony, not on the mere fact that he had "testified," fails for the same reason. The only evidence against Avila was his testimony in the FLSA action, and it was conceded that only those who testified in the FLSA action were disciplined for not seeking overtime. We leave for another day whether use of an employee's trial testimony is entirely forbidden in an adverse action when there is also other evidence of the alleged infraction before the decision maker; no such evidence was proffered by the City here.

AVILA V. LAPD                    15

Nor did the district court abuse its discretion in telling the jury, after it posed a question on protected activity, to rely on the original instructions. *See United States v. Romero–Avila*, 210 F.3d 1017, 1024 (9th Cir. 2000); *see also United States v. Alvarez–Valenzuela*, 231 F.3d 1198, 1202 (9th Cir. 2000) (noting that this practice avoids "possible error sometimes found in trying to elaborate on a given instruction"). The supplemental instructions would have done more to confuse than to clarify. *See Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005) (noting that jury instructions "must not be misleading") (quotation marks and citation omitted). Avila never argued to the jury that his testimony insulated him from adverse action or that it could not be used in a disciplinary proceeding. Nor did he claim that he could not be fired for failing to request overtime.[5] Rather, Avila's claim was that the true reason he was fired was *because he testified* against his employer in a FLSA action, not because he violated the overtime rules.

Indeed, the LAPD's representative at the BOR hearing conceded that Avila had been investigated only because he testified at the Maciel trial, testifying that the

> investigation was conducted as a result of sworn testimony given by [Avila and Romney] during a civil trial surrounding allegations of a violation of [FLSA] . . . . Commander [Maslin] was provided transcripts of the testimony given by seven officers during that court case . . . . After having

---

[5] Because of the district court's decision that the BOR determination had limited preclusive effect, Avila could not contest that not seeking overtime was a firing offense.

> reviewed the transcripts and after due
> consideration, Commander Maslin elected to
> initiate a personnel complaint against Officer
> Avila and Officer Romney.

More tellingly, Commander Maslin admitted that despite uncontested evidence that thousands of officers, including Avila's superiors, routinely did not claim overtime for lunch, the only officers singled out for discipline were those who testified at the Maciel action.[6]  Nor was there any claim that Avila was disciplined for anything else.   When Avila resigned, his commanding officer wrote that "Officer Avila was a stellar employee and an individual of personal integrity and honor.  He performed his duties well, got along well with his co-workers, and was respected by his peers.   This Department is losing a valuably trained asset."

In short, as this case was tried, the issue for jury resolution was not whether the LAPD could fire Avila for not claiming overtime or whether his trial testimony could be used in the administrative hearing.  Rather, the only issue was whether the reason given by the LAPD for the termination was a pretext.   That is precisely what the FLSA anti-retaliation provision forbids.  *See* 29 U.S.C. § 215(a)(3) (making it unlawful to discharge an employee "because such employee . . . has testified" in a FLSA action); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1333 (2011) (holding that the anti-retaliation provision makes FLSA's "enforcement scheme effective by

---

[6] In addition to the Maciel action, there were at least four other FLSA actions filed against the LAPD alleging similar overtime violations.  One of the cases was brought as a collection action, in which 2,300 to 2,500 officers, sergeants, detectives, and lieutenants joined.

preventing 'fear of economic retaliation' from inducing workers 'quietly to accept substandard conditions'") (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). "[T]he First Amendment similarly protects a public employee who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities." *Lane v. Franks*, No. 13-483, —S. Ct.—, 2014 WL 2765285 (U.S. June 19, 2014).

Put differently, the only issue for the jury in this case was whether the City was telling the truth in claiming that it fired a model employee (who was hired by another police force even as the termination action was pending),[7] for not seeking all the pay that he might have. The district court did not abuse its discretion in declining to give the requested supplemental instructions. *See Yan Fang Du v. Allstate Ins. Co.*, 697 F.3d 753, 757 (9th Cir. 2012) ("Whether there is sufficient evidence to support an instruction is reviewed for abuse of discretion."); *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) (noting that we review formulation of instructions for abuse of discretion).

---

[7] Avila's resignation did not moot his retaliation claim because the BOR proceeded against Avila in absentia.

## IV

The City also contends that the district court abused its discretion in awarding attorney's fees and liquated damages.[8] We disagree.

### A.

FLSA authorizes an award of reasonable attorney's fees to a prevailing plaintiff in anti-retaliation suits. 29 U.S.C. § 216(b). We review fee awards for abuse of discretion. *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1124 (9th Cir. 2008). The City does not contest that Avila was the successful party, rather it contends that the award was too large.

Avila originally requested $748,522.50 in fees. The district court, in a thorough order, instead awarded $579,400. The court reduced the lead counsel's requested rate, eliminated administrative, clerical, and unproductive hours, and deducted 30% of the time with vague billing descriptions. The district court also granted the City a 10% reduction in the overall amount of the fees requested to account for time "expended on the failed claims," notwithstanding that these claims were "based upon the same core set of facts and generally related legal theories" as the successful claim. Given the district court's careful explanations of its reasons for the award, we find no abuse of discretion.

---

[8] After the City filed its notice of appeal, the district court awarded trial preparation costs to Avila. Because the City never filed an amended or separate notice of appeal, we lack jurisdiction to review that award. *Whitaker v. Garcetti*, 486 F.3d 572, 585 (9th Cir. 2007).

**B.**

FLSA also allows a successful plaintiff in an anti-retaliation suit to recover liquidated damages. 29 U.S.C. § 216(b). We review such awards for abuse of discretion. *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 402 (9th Cir. 1985).

The district court awarded liquidated damages because they "would work to compensate [Avila] for a delay in payment of wages owed and also provide an incentive for future employees to report wage and hour violations by their employers." The City contends that the latter part of the court's statement shows that the liquidated damages award was improperly punitive. The trial judge, however, plainly indicated a compensatory purpose, and liquidated damages are not rendered punitive merely because they also have an incidental deterrent effect. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 709–10 (1945) (noting that Congress "plainly intended" section 16(b) to have a "deterrent effect").

**V**

For the reasons stated above, we **AFFIRM** the district court's judgment.

20                          AVILA V. LAPD

VINSON, District Judge, dissenting:

This is a very troubling case that raises a number of significant legal issues. I will limit the focus of my dissent, however, to what I believe is the most serious and manifest error: the jury instructions.

This is also a very important case, for retaliation claims based on federal statutes are increasingly a major part of employment litigation in federal courts. Recent cases from the Supreme Court of the United States, *see* note 3 *infra*, have highlighted new interpretations of the causation standard in some of these cases. All parties who deal with those laws, including employers and employees, their attorneys, district judges, and trial juries, need more clarification and certainty in this area. Unfortunately, the majority's opinion does not provide that.

                              I

Before turning to the jury instructions, it might be helpful to briefly discuss the nature of the testimony at issue in this case. The majority repeatedly states that Avila and two fellow officers, Romney and Anderson, were disciplined only after they testified in the *Maciel* litigation. *See, e.g.*, Maj. Op. at 5 ("[The] termination occurred only after Avila had testified in [the *Maciel* suit.]"); *accord id.* at 5 ("The evidence at trial was that the only officers disciplined . . . were those who testified against the LAPD in the *Maciel* suit[.]"). Although technically true, the substance of their *Maciel* testimony is critical, as Avila, Romney, and Anderson were also the only officers who had openly admitted to insubordination while they testified. Specifically, they admitted that for several years they failed to report overtime — and failed to report

supervisors who allegedly told them to do so — even though they knew it was "serious misconduct" for which they could be fired. Accordingly, when the majority says "the only officers singled out for discipline were those who testified at the *Maciel* action", *id.* at 16, it is more complete and factually accurate to say that "the only officers singled out for discipline were those who testified at the *Maciel* action *and who admitted under oath that for years they knowingly and repeatedly violated policies that they were specifically told would subject them to termination.*" It is important to keep in mind that Avila, Romney, and Anderson did more than "testify" in the *Maciel* case.[1]

To the extent that the majority appears to believe that someone who testifies in an otherwise protected hearing is, *ipso facto*, immunized from the consequences of any self-incriminating admissions made during his testimony, I disagree. There is a clear and legally recognized distinction between the mere act of testifying on one hand and, on the other hand, making admissions while testifying that provide independent grounds for discipline. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188–91 (11th Cir. 1997) (concluding that an employee who testified in a protected Title VII case and admitted sexual harassment could be fired and that in "virtually every" such case the employer would be entitled to summary judgment, absent direct evidence of retaliation or pretext); *cf. Lane v. Franks*, — S. Ct. —, 2014

---

[1] To be clear, I am not suggesting that a jury necessarily must have *believed* that Avila was disciplined for his admitted insubordination. He could argue based on the evidence (and he did argue) that the LAPD internal investigation and BOR proceedings were deficient, biased, targeted, and used to retaliate against him — and a properly instructed jury might have agreed. The problem in this case, as will be seen shortly, is that the jury here was not properly instructed.

WL 2765285, at *10 n.5 (U.S. June 19, 2014) (noting in a First Amendment retaliation case: "Of course . . . wrongdoing that an employee admits to while testifying may be a valid basis for termination or other discipline."). Although the act of testifying is protected, the testimony itself is not privileged. This distinction is rooted in both reason and common sense.[2]

Now to the jury instruction problem.

## II

The FLSA makes it unlawful to take adverse action against an employee "because such employee has . . . testified" in a FLSA proceeding. 29 U.S.C. § 215(a)(3). As this court previously explained in the Title VII context, to prove a violation of such a statute, an employee may have evidence from which "the only reasonable conclusion a jury could reach is that discriminatory animus is the *sole* cause for

---

[2] Perhaps this is apparent, but in reading the majority's opinion, one could interpret it otherwise, when it states, *inter alia*: "The only evidence against Avila was his testimony in the FLSA action . . . . We leave for another day whether use of an employee's trial testimony is entirely forbidden in an adverse action when there is also other evidence of the alleged infraction[.]" Maj. Op. at 14. The clear implication is that use of an employee's testimonial admission *is* "entirely forbidden" (he is immune from discipline) *unless* there is "other evidence of the alleged infraction" (and even then it may *still* be forbidden). That implication is not the law, as even Avila's counsel recognized at oral argument, when he agreed that an officer could be disciplined if, while testifying during a protected hearing, he admitted to "widespread beating of civilians." Further, as noted *infra*, this issue was discussed at trial during argument on the jurors' questions and everyone — Avila, the City, and the trial judge — agreed that there is a difference between the protected act of testifying and admitting to misconduct while testifying.

AVILA V. LAPD                              23

the challenged employment action or that discrimination played *no* role at all in the employer's decisionmaking[.]" *See Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856 (9th Cir. 2002) (emphasis in original), *aff'd* 539 U.S. 90, 123 S. Ct. 2148 (2003). In such "sole cause" (or "pretext") cases, the jury must be instructed "to determine whether the challenged action was taken 'because of' the prohibited reason," and, if the jury finds that it was, the employee prevails. *Id.* If, on the other hand, the jury determines that it "played *no* role at all", the employer prevails. *Id.*

However, where there is evidence of more than one potential cause for the adverse action (so-called "mixed motive" cases), a different instruction should be used. Thus, if the evidence at trial "could support a finding that discrimination is one of two or more reasons for the challenged decision, at least one of which may be legitimate, the jury should be instructed to determine first whether the discriminatory reason was 'a motivating factor' in the challenged action." *Id.* at 856–57. If the jury answers that question in the affirmative, the employee prevails *unless* the employer can then prove that it would have made the "same decision" even if the impermissible factor (protected activity) had not been considered. *See id.* at 857; *accord Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 & n.2 (9th Cir. 1996) (holding same in the FLSA retaliation context). In other words, if there is enough evidence to support it, the "mixed motive" jury instruction is called for, where the appropriate causation standard is only "a motivating factor" but which *must* be coupled with a "same decision" affirmative defense instruction.

Before trial, Avila proposed a "sole cause" instruction under Ninth Circuit Model Instruction No. 10:3, which

provided that he would prevail on his claim if he showed: (1) that he engaged in protected conduct; (2) that he was subjected to an adverse job action; and (3) that he was subjected to that action "because of" the protected conduct. The City objected to the instruction as it did not account for its defense that there were valid, independent, and non-retaliatory grounds for Avila's termination — namely, his admitted insubordination — and that the LAPD "would have acted as it did regardless of any protected activity by plaintiff." The City thus requested a "mixed motive" jury instruction with the "motivating factor" causation standard, along with the following "same decision" affirmative defense:

> If the plaintiff has proved all three of these elements, the plaintiff is entitled to your verdict, *unless the defendant has proved by a preponderance of the evidence that it would have made the same decision* even if the plaintiff's participation in a protected activity had played no role in the employment decision. In that event, the defendant is entitled to your verdict, *even if the plaintiff has met his burden of proof on all three of the above elements.*

(Emphasis added). This "same decision" defense instruction was taken verbatim from the "mixed motive" alternative instruction in the then-current Ninth Circuit Model Instruction No. 10:3.[3]

---

[3] This pattern instruction, which by its very title applied to Title VII cases, was amended last year to omit the "mixed motive" alternative on the basis of the Supreme Court's decision in *University of Texas S.W.*

AVILA V. LAPD                    25

The City also proposed the two special instructions that the majority has quoted in full. *See* Maj. Op. at 11. The underlying purpose of these instructions was to tell the jury of the distinction between the act of testifying, which cannot serve as a basis for adverse action, and admitting to misconduct while testifying, which can.

The trial judge rejected both special instructions, but he appeared to agree that the evidence supported a "mixed motive" instruction. Yet, he ended up giving a combination of a portion of the "mixed motive" and a portion of the "sole cause" instructions.[4] First, he instructed the jury that Avila would prevail if he proved that his testimony in *Maciel* was

---

*Med. Center v. Nassar*, — U.S. —, 133 S. Ct. 2517 (2013), which had analyzed the statutory "because [of]" language and rejected a motivating factor test in the Title VII retaliation context. In reaching this conclusion, the Supreme Court relied on its decision in *Gross v. FBL Financial Servs.*, 557 U.S. 167, 129 S. Ct. 2343 (2009), which interpreted similar "because of" statutory language and held that a mixed motive instruction was improper under the Age Discrimination in Employment Act. Whether and to what extent *Nassar* and *Gross* may have a bearing on retaliation claims under the FLSA is at this point unclear, although the FLSA uses similar statutory "because [of]" language. Nevertheless, there is, to date, Ninth Circuit authority providing that the mixed motive/motivating factor analysis is available to retaliation claims under that statute. *See Knickerbocker*, 81 F.3d at 911 & n.2. Thus, I accept that is still the law in this circuit (as it was at the time of trial in this case), regardless of what the Supreme Court may decide in FLSA retaliation cases in the future.

[4] The parties do not dispute on appeal that this was a "mixed motive" case. The majority states that the trial judge "gave the City's requested [mixed motive] instruction," Maj. Op. at 9, but that is not accurate. The City requested the mixed motive instruction which included the *incorporated* "same decision" affirmative defense, as set out in the pattern instruction. The judge significantly changed that instruction, as will be seen.

"a motivating factor" for the challenged action, which the court defined as "a reason that contributed to the decision to take certain action even though other reasons also may have contributed to the decision." So far, so good. However, the judge went astray by omitting the "same decision" affirmative defense language from this circuit's model instruction and, instead, instructing the jury as follows on the City's defense:

> [I]f the defendant has proved by a preponderance of the evidence that the plaintiff's participation in a protected activity played no role in any of the adverse employment decisions, the defendant is entitled to your verdict.

This instruction has *nothing* to do with the "same decision" defense, and it mixes apples with oranges. It told the jury that Avila would prevail if he proved that his participation in the protected activity was "a motivating factor" (i.e., a contributing reason among others) for the adverse action, which could then be overcome *only* if the City could turn around and prove that the protected activity "played no role" at all. This illogical and internally inconsistent instruction was not the same decision affirmative defense set out in the Ninth Circuit pattern jury instructions, which the City had requested.[5]

---

[5] It appears that the "no role" portion of the instruction was, in substance, derived from Avila's previously (and properly) rejected "sole cause" instruction. *See Costa*, 299 F.3d at 856 (describing "sole cause" cases as those in which "the only reasonable conclusion a jury could reach is that discriminatory animus is the sole cause for the challenged employment action *or that discrimination played no role at all in the employer's decisionmaking*") (emphasis added). In mixed motive cases

On this issue, *Knickerbocker* is instructive. That was a mixed motive FLSA retaliation case in which the employee argued that the adverse employment action "should be deemed retaliatory if the protected conduct was 'in any way' a part of the employer's decision", 81 F.3d at 911 n.2, which is merely the inverse way of arguing that the employer, to prevail, must demonstrate that the protected conduct "played no role" in the decision. This circuit rejected that argument, stating that it was "wiser" to conclude in FLSA mixed motive cases that the employer need only prove that, although the protected conduct "played a role," it would have done the same thing *even if* "the proper reason alone had existed." *See id*. at 911 & n.2.[6]

Notably, the majority opinion does not dispute that the "no role" instruction was erroneous. Instead, it appears to

---

such as this, the employer has no burden to prove that the protected activity "played no role." *See Knickerbocker*, 81 F.3d at 911 & n.2. That language is not even compatible, since in mixed motive cases it is *presumed* that the activity may have "played a role," but the employer has the opportunity to try and prove that it would have taken the same action anyway. *See Ostad v. Oregon Health Sciences Univ.*, 327 F.3d 876, 884–85 (9th Cir. 2003) (citing *Knickerbocker* and noting that in a "mixed motive" case the employee must prove that the protected activity was a "substantial or motivating" factor, after which — despite that it was a factor — the employer will prevail if it proves that "the adverse action would have occurred anyway"). If employers in mixed motive cases were required to show, as here, that the protected conduct "played no role" in the action, then no employer could ever prevail on its affirmative defense.

[6] Avila maintains in his brief that the instruction the trial judge gave was "in substance" the same as the one that the City had requested, but the two are actually contradictory. Requiring the City to prove for its affirmative defense that it would have made the same decision *even if* the protected activity was a motivating factor is manifestly not the same as requiring the City to prove that the protected activity "played no role."

suggest three reasons why that error does not warrant reversal: waiver, insufficient evidence, and harmless error.

## A.

For its first rationale, the majority contends that the error has been waived because the City did not clearly and distinctly raise the issue in its opening brief. *See* Maj. Op. at 9. Although the City had requested the Ninth Circuit's pattern "mixed motive" instruction — which included the incorporated "same decision" affirmative defense — it did not expressly object to the "no role" instruction that was given.[7] Rather than assign error to that instruction, the City has instead argued that the court erred in not giving the two special instructions that sought to explain the pivotal distinction between taking an action because an employee testified, and taking an action because he admitted to misconduct while testifying. There are two reasons why waiver does not apply here.

First, even though the City did not specifically object to the instructions as they were originally given, we can review jury instructions for plain error in civil cases. *See* Fed. R. Civ. P. 51(d)(2). Plain error is: "(1) error, (2) that is plain, and (3) that affects substantial rights . . . . If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the *fairness*, *integrity*, or public reputation of judicial

---

[7] The closest the City comes to making this argument is in its reply brief, where it points out — quite rightly — that it could not have possibly shown that the *Maciel* testimony played no role in the adverse action when the City's entire defense was that the action was appropriate based on Avila's admission "*during that testimony!*" (Emphasis in original).

proceedings." *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002) (quotation marks, citations, and brackets omitted) (emphasis added). It is apparent to me that the failure to give the "same decision" instruction that the City had requested was plain error on the facts of this case, as it deprived the City of its entire defense and thus seriously affected the fairness and integrity of the trial.

To prevail on his retaliation claim, the jury was instructed that Avila had to prove: (1) that he was engaged in protected activity when he testified in the *Maciel* case; (2) that he was then subjected to an adverse employment action; and (3) that his *Maciel* testimony was a "motivating factor" in the decision to take that adverse action. This is a somewhat unique case in that all three elements — from the jury's perspective — were essentially indisputable. As for the first two, Avila obviously engaged in protected activity by testifying in the *Maciel* action, after which he was obviously subjected to adverse action. As for the third element, because the City's entire defense was that it took the adverse action *based upon* the misconduct that Avila admitted *during* his testimony, the protected activity obviously "contributed to" the decision to take that action. The trial judge specifically instructed the jury that: "If the plaintiff has proved all three of these elements, the plaintiff is entitled to your verdict." These are the first three elements of this circuit's pattern "mixed motive" instruction — but the judge left out the same decision affirmative defense, which is what the "mixed motive" instruction is all about. Consequently, the jury was told that the *only* way for the City to avoid liability, per the judge's deviation from the pattern instruction, was if it could somehow prove that the trial testimony in *Maciel* "played no role" in the action — which, of course, it could not possibly do. In other words, *there was no way for the City to prevail*

*under the instructions as given to the jury, and the outcome of the case was predetermined.* I believe this instructional error was plain.[8]

Furthermore, even if the trial judge's failure to give the "same decision" instruction was not plain error, this issue was not waived because that omission plus the inconsistent "no role" instruction that was given led directly to — and aggravated — the jury's obvious confusion, and it cannot be separated from the equally meritorious special instructions argument that the City *has* advanced on appeal. As will be seen, the two arguments are inextricably interrelated.

During their first full day of deliberations, the jurors (who had deliberated only part of the day before) sent out a note asking the following three questions:

---

[8] The majority says "the *only* issue [for the jury to resolve] was whether the reason given by the LAPD for the termination was a *pretext*." *See* Maj. Op. at 16 (emphasis added). But, this action was tried as a mixed motive case, not as a sole cause case, so pretext was not an issue at trial. In *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061 (9th Cir. 2003), this court discussed the differences between the two types of cases and noted "it does not make sense to ask if the employer's stated reason for terminating an employee is a pretext for retaliation" in a mixed motive case; rather, in such cases the *first* issue is whether the protected activity was a motivating factor in the adverse action, and the *second* issue is whether the employer would have made the same decision anyway. *See id.* at 1067–68. As for the first issue, as noted, Avila's trial testimony in *Maciel* clearly "contributed to" the adverse job action, and, therefore, it was a "motivating factor" in the decision to take the action. As for the second issue, the majority opinion makes no attempt to explain how the jury could have possibly resolved that question in favor of the City in light of the instruction that it was given. It couldn't. The law that the jury was told to follow was wrong — pure and simple — and as a result the City was denied its entire defense, which was plain error.

> Is testimony given at an FLSA action
> protected? Then, can that testimony be used as
> evidence in a trial? Is the physical act of
> testifying the protected activity under FLSA,
> or is the testimony protected or both?

Both counsel and the trial judge agreed that the answer to the first two questions was "yes," but there was disagreement as to the third. Avila's lawyer suggested at the time that the act of testifying and the testimony itself were *both* protected, but the City's lawyer believed that was legally incorrect because, "obviously, there's examples, if you admitted committing a homicide in an FLSA proceeding, I don't think anybody would argue that would be protected activity." Although the judge could have easily answered the third question, he ultimately decided (with both counsel agreeing) to respond by simply re-reading a previous stipulation reflecting that Avila had testified in the *Maciel* action and that "[t]he giving of this testimony is protected activity under the [FLSA]."

The jury continued to deliberate the rest of that day. Still confused on the third day, however, it sent out a second series of questions:

> If testimony given in an FLSA proceeding is
> protected, is it legal to use that testimony
> against the person testifying? If it is legal to
> use that testimony against the person
> testifying, then, how is that testimony
> protected?

The trial judge's following summary of these questions as he began his discussion with counsel accurately describes the jury's dilemma:

32                          AVILA V. LAPD

> My sense is that the jury is caught in a
> circular reasoning process. It would appear
> that the jury should be told that a person can
> testify in an FLSA proceeding, that the
> testimony is protected, that in this case the
> LAPD could not terminate the plaintiff . . . for
> testimony — the fact that he testified in the
> FLSA proceeding.
>
> The follow-up is that they could terminate
> him if the department concluded that he made
> an admission in that testimony that provided
> separate but good cause to terminate him.
>
> So, they can't terminate him for testifying, but
> they can terminate him if he made an
> admission that provided separate grounds for
> termination that arose to good cause.

Avila's counsel replied that he "generally agree[d] with what
the court is trying to communicate." However, he maintained
that it was "more precisely stated" in the (erroneous)
"motivating factor/no role" instruction that had already been
given to the jury. After quoting from that instruction, Avila's
attorney stated as follows:

> So, in order for the jury to say in this case
> under the law that there is not a motivating
> reason, they must be able to affirmatively say
> the defendant has proved by a preponderance
> of the evidence that plaintiff's testimony in
> *Maciel played no role* in any of the adverse
> employment decisions.

Because what is incumbent upon the defense to show is it's not a motivating reason. And the flip side of a motivating reason — or should I say the inverse of a motivating reason is that the protected activity *played no role*, which is covered in the jury instruction that the court has given.

(Emphasis added).[9] Defense counsel responded by agreeing with what the trial judge had said at the beginning of the discussion, i.e., that there is "a distinction between the act of testifying . . . versus the content of the testimony[.]" He then reminded the court: "We proposed two special instructions that directly address this pivotal issue. Those instructions were rejected by the court. Let me reoffer them for the court to consider because it does seem since the jury has the ["motivating factor/no role" instruction] they're struggling with it." The judge once again rejected the two special instructions and (*over the City's objection*) decided to re-read the erroneous instruction to the jury because, he said, "this is getting way too complicated." After the judge announced what he planned to do, the City made one last attempt and requested, in the alternative, that the judge at least give the jury "the explanation that you provided to counsel when you came on to the bench, the distinction between the giving of testimony and the use and contents of the testimony." The court replied "that will not be done at this time."

---

[9] Once again, this is incorrect. The "flip side" or "inverse" of a motivating factor is *not* that the protected conduct "played no role" in the adverse job action. Instead, in mixed motive cases, the employer need only show it would have made the "same decision" regardless of the role that the protected activity *did* play. *See supra* note 5.

The trial judge thus not only failed to correct the erroneous instruction — by giving "special instructions" that could have freed the clearly struggling jury from the "circular reasoning process" that he himself believed it was "caught in" — but he actually repeated and compounded the original error by just re-reading the same erroneous instruction. This sequence shows the inseparable overlap between the original instructional error regarding the lack of a proper "same decision" defense (which has not been directly raised on appeal) and the court's response to the jury questions and refusal to give the special clarifying instructions (which has been).

In sum, Avila obviously engaged in protected activity when he testified in *Maciel*, but it is also obvious that he admitted to "serious misconduct" during his testimony, which provided a legitimate basis for discipline. Prior to trial, the City requested special instructions to address that issue, but they were rejected. After the jury was inexplicably told that the City could prevail only if it proved that the *Maciel* trial testimony "played no role," the jury was clearly (and understandably) confused about whether it could separate Avila's admitted misconduct as ground for discipline from the protected act of testifying. To try and remedy the problem, the City once again proposed — but the trial judge once again rejected — special instructions that could have cleared up the jury's confusion on this point.

The majority says that the two special instructions "would have done more to confuse than to clarify", Maj. Op. at 15, but it is hard to see how the jury could have possibly been more confused than they already were with the instructions as given. To the extent the special instructions were themselves confusingly-written, the judge could have done what the City

had requested as an alternative to giving those instructions: just tell the jurors as he succinctly told the lawyers: *"they can't terminate him for testifying, but they can terminate him if he made an admission that provided separate grounds for termination that arose to good cause."* That simple and uncomplicated clarifying statement would not have confused the jury and would have provided the answer to the problem that had been created by the erroneous instruction.

As it was, however, the trial judge *twice* instructed the jury that the City, to prove its defense, must show that Avila's testimony in *Maciel* "played no role" in the challenged action, which was legally incorrect. Thus, once Avila quite easily met his threshold case, the City did not have the opportunity for the jury to even consider its defense: that it took the action because of the admitted misconduct, and not for the mere act of testifying. I believe this was not only plain error, but it was so closely related to the persuasive special instructions argument that the City has raised that the issue has clearly not been waived.

## B.

The majority next maintains that, even if the error had not been waived, the result would not change as there was literally "*no* evidence" to warrant the "same decision" jury instruction. *See* Maj. Op. at 14, 10 (emphasis in original). With this assertion (and other similar representations), the majority appears to suggest that the evidence at trial was so indicative of retaliation that the City basically had no defense.[10] A close and careful review of the full trial record

---

[10] The majority states, for example, that "[t]he *uncontested* evidence in

reveals that there was ample evidence to support the same decision defense, as the case was much closer than the majority's opinion suggests. The following evidence was presented to the jury:

The LAPD is a very large municipal employer with approximately 10,000 sworn members. At the time relevant here, it was LAPD "official" policy that any officers who worked through their 45-minute lunch break — generally known as a "Code 7" — should fill out an overtime slip, report it on their Daily Field Activity Report ("DFAR"), and be paid accordingly. DFARs were completed at the end of each shift, and if there were problems with the report as submitted, a "Kick-back Sergeant" would return it the following day to be corrected. Although this was the LAPD's "official" policy, there were allegations that some supervisors adhered to an "unwritten policy" of coercing and discouraging the officers from reporting any overtime for less than one hour. There were multiple FLSA overtime cases filed against the City involving this allegation, including some large class actions that had thousands of class members. The cases posed "big problems" for the LAPD and exposed it to "huge liability."

So, in March 2003, and again in June 2005, the LAPD issued two policy memos expressly stating that there was no "unwritten policy" of not being paid overtime and that all overtime hours must be properly reported *or the employee would be subject to termination*. The officers were further told that if anyone felt pressure or coercion to not report all of

---

this case is that Avila would not have been fired had he not testified." *See* Maj. Op. at 10 (emphasis added). As will be seen, that is contradicted by the record, including the trial testimony of Avila himself.

AVILA V. LAPD                    37

their overtime, they had the "affirmative obligation" to report the source of that pressure or coercion, and they could do so anonymously and outside the regular chain of command. The failure to report all overtime and the failure to report supervisors who encouraged such conduct was insubordination, which was considered to be "serious misconduct."

At some point during this time, the Chief of Police and "top management" made the determination and decision that the LAPD would investigate claims of FLSA violations only where the alleged violators were specifically identified. It was thus incumbent on the individual making the charge(s) to provide adequate information — like names, dates, and times — to facilitate an investigation as the LAPD had limited resources and could not do "fishing expedition" investigations of hundreds (potentially thousands) of unnamed officers and still function as a law enforcement agency. The evidence presented to the jury was that whenever alleged violators were specifically identified, they were investigated by Internal Affairs.

Avila joined the LAPD in 1997, and he was assigned to patrol in the Central Division. He had the "distinct recollection" of having received and reviewed both the March 2003 and June 2005 policy memos. On or about February 23, 2007, he joined one of the ongoing lawsuits against the City and alleged that the LAPD had denied him overtime pay under the FLSA. *Roberto Alaniz v. City of Los Angeles*, 2:04-CV-8592-GAF (doc. 637).[11]

---

[11] The majority twice refers to Avila as a "model" officer. *See* Maj. Op. at 4, 17. Putting aside the evidence that he had five sustained personnel complaints and was suspended four times (for a total of 18 days) for

In January 2008, almost a year after he joined in the *Alaniz* lawsuit, Avila testified in the *Maciel* litigation. Yvette Bass, a detective with Risk Management for the LAPD, was in the courtroom to observe the trial. While testifying, Avila admitted under oath that for several years he and myriad unnamed "other officers" knowingly and repeatedly violated the FLSA and LAPD "official" policy by not reporting overtime when they worked through their Code 7s. He testified that he did this, even though he knew it constituted "serious misconduct," because he felt "intimidated" by supervisors who "discouraged" him from requesting overtime in that situation. He never reported any of the supervisors, however, which he knew was separate misconduct. He further testified that he would sometimes put missed Code 7s on his DFARs, but the Kick-back Sergeants would give them back to him the following day and order him to falsify the records. He did not ever report any of the Kick-back Sergeants who allegedly told him to do this, and he testified that he falsified

---

various misconduct, whether he was a good employee is irrelevant as there has been no claim that he was fired for being a bad employee. Rather, he was terminated only after — and allegedly because — he admitted under oath that he committed "serious misconduct." And, there is evidence from which a jury could have found that is what happened here. For example, nine months *after* he joined in the *Alaniz* lawsuit, Avila received a performance review that said he "possesses a good work ethic" and is "courteous and professional," "dedicated," "exemplary" and "consistently outstanding." The timing of this very (and exclusively) favorable review would appear to undermine the suggestion that it was his mere participation in a FLSA case against the LAPD, as opposed to his admissions of "serious misconduct" during such case, that led to his termination.

AVILA V. LAPD                    39

DFARs "over and over again", even though he knew it was even still more misconduct.[12]

With his trial testimony in *Maciel*, Avila implicated potentially *hundreds* of unnamed supervisors and possibly *hundreds* of unnamed officers, but he provided almost nothing to support his claims. He readily admits that he never provided any specific dates or times, and he admits that he provided almost no names.[13] In fact, even though he claimed that it had been going on for years, he only identified two supervisors who allegedly pressured him to not report overtime: Sergeant Walker and Sergeant Miyazaki. Sergeant Walker died years before, but Sergeant Miyazaki was still with the LAPD, and, in fact, had also testified in the *Maciel* case. During his testimony in that litigation, Miyazaki stated that he had "probably" violated the overtime rules.

Detective Bass reported what she observed at the *Maciel* trial, after which an internal complaint was brought against both Avila and Sergeant Miyazaki. The complaint was brought against Sergeant Miyazaki for two reasons: because Avila specifically identified and accused him of misconduct, *and* (like Avila) "because he might have implicated himself in his own testimony." During the investigation, Internal

---

[12] Since Avila had admitted to knowingly and repeatedly violating policy in three separate ways over many years, there was much more "serious misconduct" at issue in this case than just an officer "periodically work[ing] through his lunch break" and "not seeking all the pay that he might have." *See* Maj. Op. at 4, 17.

[13] Avila was not able to name a single Kick-back Sergeant, but he was able to provide an estimate of when they allegedly ordered him to falsify his DFARs: sometime between 2004–2006. This did not help narrow the field, however, as the Kick-back Sergeants change almost every day.

Affairs asked Avila multiple times to confirm if his *Maciel* testimony had been accurate, and he agreed that it was. Subsequently, the charge against him was sustained, as the complaint adjudicator determined (based on his sworn testimony) that he "was clearly aware of the FLSA policies but violated them anyway." The complaint against Sergeant Miyazaki, meanwhile, was deemed to be unfounded.[14] The adjudicator found as follows with respect to Miyazaki:

> Avila's claim was self-serving. And he made it in court as a plaintiff in a lawsuit [*Alaniz*] against the City for uncompensated overtime.

> Avila admitted to being trained on FLSA-related policy and his right to compensation.

> Avila's statement was unsupported by any specific facts, such as, dates, notes, or notifications to other supervisors for what would have been a clear violation of policy.

---

[14] There were some notable distinctions between Miyazaki and Avila. Avila was unequivocal that he had *knowingly* committed misconduct over several years. Miyazaki testified that he "probably" violated the overtime policy in some manner, but it was unclear *how* he might have done so. Review of his testimony in *Maciel* reveals that, to the extent he admitted to violating the official policies, it was very different than what Avila had confessed to. As supervisor, Sergeant Miyazaki had the "affirmative duty" to make reasonable efforts to be sure that his officers were taking (or being paid for working through) their Code 7s. He testified that, due to the demands of being watch commander and confusion as to what his affirmative duty required, he might have violated the policies. *But,* he strongly denied that he ever discouraged officers from seeking overtime, which the adjudicator accepted, as quoted in the text.

> While not part of the investigation, the adjudicator was personally aware of overtime granted to employees for no Code 7 on a regular basis by supervisors including Miyazaki.

> No Code 7 overtime makes up about 3 percent of Central Area's overtime expenditures. This fact is inconsistent with Avila's claim that such overtime was routinely denied.

After the investigation, the Chief ordered Avila to a hearing before the BOR. In response, Avila filed a complaint in state court to stop the hearing from moving forward and, in connection with that proceeding, he filed a sworn declaration in which he again: (1) admitted that for years he knowingly failed to report overtime when he worked through his Code 7s, and (2) confirmed that his *Maciel* testimony was accurate. Ultimately, he lost his bid to stop the BOR from holding its hearing.

Avila appeared at the BOR with counsel to contest the charge. He decided to resign from the LAPD on the first day of the hearing and did not return after the lunch break. Pursuant to BOR procedure and written direction from the Chief, the hearing continued without him for the next three days, during which his attorney fully participated, examined witnesses, lodged objections, put on evidence, and presented his defense. After hearing the evidence, the BOR panel assigned to the case (which was comprised of two LAPD Captains and one civilian) found Avila guilty of "serious misconduct" and recommended termination. He was

thereafter "terminated", even though he had already resigned and his resignation accepted.[15]

Avila did not appeal the BOR's determination. Importantly, this means, as the district court had earlier held, that he is "bound by the factual findings of the BOR — that he violated departmental policy and that such insubordination was grounds for termination — and [he] cannot challenge those findings[.]"

With the foregoing in mind, I do not agree that the City had "*no* evidence" to support the "same decision" affirmative defense. This court has said that, for the proof required to assert this defense, an employer need only have "some objective evidence" that it would have taken the same action notwithstanding the protected activity. *See Metoyer v. Chassman*, 504 F.3d 919, 939–40 (9th Cir. 2007) (citation omitted). Because the inquiry is "an intensely factual one", mixed motive defenses "are generally for the jury to decide." *Id.* at 940 (citation omitted).

---

[15] The majority notes that Officers Romney and Anderson testified adverse to the LAPD in *Maciel* and they, too, were sent to the BOR and fired. *See* Maj. Op. at 5–6 & n.1. As stated before, both officers — like Avila — admitted to "serious misconduct" under oath. Specifically, Romney admitted that he knowingly failed to report overtime for almost two decades (even after the 2003 and 2005 memos), while Officer Anderson not only admitted to misconduct in her *Maciel* testimony, but she actually pled guilty to one of the charges against her at the BOR. Romney and Anderson identified supervisors who allegedly violated the overtime policies as well. None of these supervisors admitted to the misconduct (but, rather, denied wrongdoing), and they were exonerated following internal investigations.

AVILA V. LAPD                    43

I have included these evidentiary details from the record because the majority states "[i]t simply cannot be argued on this record that Avila would have been fired had he not testified." *See* Maj. Op. at 14. In my opinion, the majority fails to draw the critical distinction between the act of testifying and admitting to insubordination while testifying. There is no legal basis for treating the testimony as privileged. An employee is not entitled to full use immunity when he testifies during an otherwise protected proceeding. He can testify without fear of reprisal *unless* he implicates himself in some manner. Thus, as in this case, where there is evidence before the jury that an employee admitted under penalty of perjury that he was knowingly and repeatedly insubordinate for many years, that testimony is *automatically* "some objective evidence" for the "same decision" defense. This is because, in such a case, the jury could easily determine that the employer would have done the same thing independent of the *fact* that the employee had testified (for example, if the misconduct had been discovered in some other way). The jury would, of course, not be *required* to make such a finding — it might find that the adverse action was retaliatory — but it *could*, depending on all of the evidence in the case. Accordingly, the "same decision" defense instruction is warranted if an employee admits to misconduct while testifying.

Consider the facts of this case. Avila was a very good (albeit not a "model") police officer who received favorable performance reviews — even *after* he sued the LAPD for allegedly violating his FLSA rights. *See supra* note 11. There does not appear to have been any reason for adverse action against him *before* he took the stand in *Maciel* and testified as he did. If the knowing and repeated "serious misconduct" that he admitted to during his testimony is not sufficient

44                          AVILA V. LAPD

evidence to support the same decision defense in and of itself, the logic of that position would necessarily mean that he could have admitted to just about *anything* — including "widespread beating of civilians" — and still not have been fired as his record was mostly unblemished and did not otherwise warrant discipline. To the extent that the majority suggests there must be "other evidence of the alleged infraction" *separate* from the admissions on the stand, *see* Maj. Op. at 14, that is simply not the law, as even Avila's counsel conceded in the district court and on this appeal. *See supra* note 2.

Moreover, even if Avila's admissions on the stand could not be used as the basis for the "same decision" instruction, there was separate "other evidence" that would qualify. For example, Avila testified in this case that he saw Detective Bass in the courtroom before he testified in *Maciel*, and she introduced herself and told him that she was there to watch the trial for Risk Management. Very significantly, Avila has conceded that if he had told her *exactly* what he was about to testify to, she would have been "required" to report him, and he would have "expect[ed]" to be disciplined. While that pre-testimony conversation with Detective Bass never took place, Avila confirmed the accuracy of his *Maciel* testimony to investigators *after* he testified (and before he was fired). If a *pre*-testimony admission could — according to Avila himself — justify discipline and thus provide a foundation for a "same decision" defense, then his *post*-testimony confirmation of those admissions should as well.

Further, the majority's statement that "[t]he uncontested evidence in this case is that Avila would not have been fired had he not testified", *see* Maj. Op. at 10, is difficult to reconcile with Avila's own testimony. As just noted, he

*expressly* conceded that if he had said *exactly* what he testified to in the *Maciel* case in any other setting then he would have "expect[ed]" the LAPD to discipline him. That concession by itself is sufficient evidence to support the "same decision" defense instruction. *Cf. Gilbrook v. City of Westminster*, 177 F.3d 839, 855 (9th Cir. 1999) (stating "an employee cannot use protected conduct as a shield against a dismissal that would have occurred even in the absence of the protected conduct").

In addition, the sworn declaration that Avila filed to try and stop the BOR hearing further affirmed that he knowingly violated the LAPD's official policy by not reporting overtime and not reporting supervisors who allegedly told him to do so. This evidence — separate and apart from his testimony in *Maciel* — provided other grounds for the "same decision" instruction.

Finally, Avila did not appeal or challenge the BOR's ruling. Consequently, as the district court held earlier in this case, and as Avila does not dispute on this appeal, he is bound by the BOR's factual findings, including "that he violated departmental policy and that such insubordination was grounds for termination[.]" This is separate and independent "other evidence" to support the "same decision" affirmative defense.

Thus, even if Avila's admitted misconduct while testifying was not "some objective evidence" to support the "same decision" instruction all by itself (and I believe it was), there was considerable other evidence at trial: his post-testimony confirmation of the insubordination, his sworn declaration, the legally binding administrative factual findings, and his testimony before the jury in this case that he

would have been disciplined if he had said the exact same thing while not testifying. Far from there being "*no* evidence" to support the City's affirmative defense, there was, in fact, ample evidence from which a reasonable jury could have found that the City would have made the "same decision" in this case.

## C.

As to whether the error here was harmless, both the majority's opinion and Avila's brief rely on *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999) (en banc), which held that the district court's failure to give a same decision instruction was harmless. Harmless error analysis, of course, "rests on the particular facts" of each individual case. *See United States v. Frazin*, 780 F.2d 1461, 1471 (9th Cir. 1986). What is harmless error in one case "could well, under a different set of facts," not be considered harmless in another case. *See id.* It is thus important to compare the facts of *Lambert* to the facts presented here, and note the three significant ways in which the cases are very different.

First, as the court recognized, the evidence in *Lambert* was overwhelming, as it was a "rare" mixed motive case that had direct evidence of retaliation (to wit, a statement from a supervisor that plaintiff would "definitely not have a job" and would "be fired" if she filed a FLSA claim). 180 F.3d at 1008–09. The panel said that the direct evidence "strongly support[ed]" its harmless error finding. *See id*.; *accord Merritt*, 120 F.3d at 1188–91 (concluding that an employee who admits to misconduct while testifying in a protected proceeding may be terminated and the employer will be granted summary judgment, unless there is "direct evidence of retaliatory motive"). There was no direct evidence here,

and there was sufficient circumstantial evidence to support a verdict for the City.

Second, the *Lambert* court found it very important — and spent two pages discussing the fact — that the jury awarded the employee $12 million in punitive damages. *See id.* at 1009–10 (citing cases where it was held that "an instructional error regarding liability [is] harmless in light of a punitive damages award"). Not only were punitive damages not awarded in this case, but the jury awarded Availa about 1% of the compensatory damages that he sought.[16]

Third, the jurors in *Lambert* did not ask two sets of multiple questions while deliberating into the third day (after hearing only three days of evidence), strongly suggesting that they were confused by the instructions and having a difficult time reconciling them with the evidence. *Cf. Rose v. Lane*, 910 F.2d 400, 403 (7th Cir. 1990) (stating in a habeas case that involved an erroneous instruction which led to follow-up jury question: "While this question could have a variety of implications, it indicates possible jury confusion over the manslaughter instructions and therefore contributes to our finding that the instructions were not harmless.").[17]

---

[16] During closing argument, Avila's attorney had requested $230,000.00 in economic damages and 4.5 million in non-economic damages. The jury gave him $50,000.00.

[17] Although it is always difficult to try and infer what a jury is thinking with its questions, on the facts of this case, the questions are telling. The jurors astutely asked *five* related questions that centered on the *exact* problem that was created by the erroneous instruction. The last two questions asked whether the LAPD could "legal[ly]" use Avila's testimonial admission against him, and the jurors were not given the answer. If the evidence of retaliation in this case was so overwhelming

In this case, the absence of the "same decision" defense instruction and the inclusion of the "no role" instruction had the practical effect of depriving the City of its entire defense. This circuit and several others have held, albeit mostly (but not exclusively) in the criminal context, that an error cannot be found harmless if it "precludes or impairs the presentation of [a defendant's] sole means of defense." *United States v. Carter*, 491 F.2d 625, 630 (5th Cir. 1974); *see also United States v. Peak*, 856 F.2d 825, 834–35 (7th Cir. 1988); *United States v. Harris*, 733 F.2d 994, 1005 (2d Cir. 1984); *accord United States v. Evans*, 728 F.3d 953, 967 (9th Cir. 2013) (concluding that trial judge's erroneous exclusion of the "central piece of evidence" for defendant's "main defense" and which went to the "very heart" of the dispute could not be harmless, notwithstanding the "overwhelming volume and

---

that the error could be harmless, it is unlikely that the jury would have asked that question on the third day of deliberations. *See Thomas v. Chappell*, 678 F.3d 1086, 1103–04 (9th Cir. 2012) (referencing two "objective clues" that "strongly suggest that the case was close", namely, the fact that the jurors deliberated into the fifth day and sent two requests that "related specifically" to the issue on appeal, which suggests "the jury actually struggled with that question"; collecting multiple cases involving juror requests and "lengthy deliberations" between two to five days that showed the evidence was close as "'one would expect that if the evidence . . . was overwhelming the jury would have succumbed much sooner'"); *see also Aguilar v. Woodford*, 725 F.3d 970, 984 (9th Cir. 2013) (questions and notes over four days of deliberations showed the case was close) (citing *Rhoden v. Rowland*, 172 F.3d 633, 637 (9th Cir. 1999) (deliberations of nine hours over the course of three days indicated that the jury "did not find the case to be clear cut"); *Gibson v. Clanon*, 633 F.2d 851, 855 n.8 (9th Cir. 1980) ("it does not seem possible that the jury would have deliberated nine hours over [the course of two] days if the jurors did not have serious questions")); *United States v. Ottersburg,* 76 F.3d 137, 140 (7th Cir. 1996) (nine hours of deliberations "makes clear that this case was not an easy one for those called to serve as finders of fact").

substance of the government's evidence"); *Ashcraft & Gerel v. Coady*, 244 F.3d 948, 949, 954 (D.C. Cir. 2001) (holding that trial error in a civil case which went "to the very heart of [the defendant's] defense" and was "central to [his] defense" could not be deemed harmless "in the absence of any steps by the district court to mitigate the effects of the error").

The error was not only not harmless, but, it seems to me, objectively plain.

III

The FLSA's anti-retaliation provision serves a noble purpose. However, it does not extend so far as to immunize an employee who takes the stand and admits to serious misconduct. While the public interest may favor a liberal application of retaliation statutes in some cases, it is highly questionable whether that interest is being served here. The inherent unfairness is that the public (i.e., taxpayers of Los Angeles) will be required to pay about $700,000.00 in a case where, because of an erroneous instruction that was twice given (and special instructions that were twice denied), their city was deprived of the chance to defend itself. That error, based on the jury questions, appears to have been outcome-determinative. While reasonable jurors (and judges) may disagree on the merits of this case, what should be beyond disagreement is that the City and its citizens were denied the fundamental right of defense to which they were entitled under the law. Reversible error occurred, and this case should be remanded for a new trial.

I respectfully dissent.